# SOUTHERN DISTRICT OF NEW YORK

_____

**HYUNG-MIN SUH,**                                    Index No.: 1:16-cv-05598

                                    Plaintiff,          **VERIFIED
                                                        COMPLAINT**

            -against-

**THE JUILLIARD SCHOOL OF MUSIC,
COLUMBIA UNIVERSITY IN THE CITY OF NEW
YORK,**
and,
**ARA GUZELIMIAN, JOAN WARREN, ALISON
SCOTT-WILLIAMS,**

                                    Defendants.
_____

          Plaintiff, complaining of the defendants, by his attorneys, ***Juan Pablo
Vegaromero and Dawn M. Florio, Esqs.***, alleges as follows:

## THE PARTIES

1.  The plaintiff, ***HYUNG-MIN SUH,*** is a citizen and resident of the Republic of Korea.

2.  Upon information and belief, at all times relevant to this complaint, plaintiff
    **Hyung-Min Suh,** was enrolled as a student in a combined academic program,
    offered by the defendants.

3.  Upon information and belief, defendant ***Ara Guzelimian,*** at all times relevant to
    this complaint, was Provost and Dean of the Juilliard School.

4.  Upon information and belief, defendant ***Joan Warren***, at all times relevant to
    this complaint, was Vice President for Enrollment Management and Student
    Development.

5.  Upon information and belief, defendant ***Alison Scott-Williams***, at all times
    relevant to this complaint, was Title IX Coordinator at the Juilliard School.

6.  Upon information and belief, defendant, **THE JUILLIARD SCHOOL of MUSIC,
    (**hereinafter **"Juilliard"**), at all times relevant to this complaint, was and is a
    private, no-for-profit, performing arts conservatory, located at 60 Lincoln Center
    Plaza, New York, N.Y. 10023.

7. Upon information and belief, in 1924, the Juilliard Foundation started the Juilliard Graduate School, which, in 1926, partially merged, with the Institute of Musical Art and, finally, in 1946, the combined schools were named the **Juilliard School of Music.**

8. Upon information and belief, **COLUMBIA UNIVERSITY in the City of New York,** (hereinafter **"Columbia"**), was founded in 1754 as King's College by royal charter of King George II of England. It is the fifth oldest institution of higher learning in the United States, and, at all times relevant to this complaint, was and is a private, not-for-profit, institution of higher education located at 116th Street and Broadway, New York, N.Y. 10027.

## JURISDICTION AND VENUE

9. The matter in controversy, exclusive of interest and costs, exceeds the sum of Seventy-five Thousand Dollars ($75,000.00) and jurisdiction of this court is based upon diversity of citizenship as provided by **28 U.S.C. § 1332.**

10. Venue in this District is designated pursuant to **28 U.S.C. § 1391(a)(1) and (c).**

## UNDERLYING FACTS

11. Upon information and belief, at all times relevant to this complaint, the plaintiff was a full-time registered student in a joint academic program known as The Barnard-Columbia-Juilliard Exchange Program, pursuing a Bachelor's degree at Columbia and a Master's degree at Juilliard.

12. Upon information and belief, on or about March 16th 2013, a Pre-College student at Juilliard made a complaint of harassment against the plaintiff to the Artistic Director of the Pre-College Program.

13. Upon information and belief, a Sexual Harassment Hearing was held by a Juilliard Harassment Panel, on July 9th 2013, and, pursuant to its findings, it expelled plaintiff from The Juilliard School, placing said sanction on plaintiff's permanent record.

14. As a result of defendants' actions, plaintiff was expelled from defendant Juilliard and was not allowed to continue his studies toward a Bachelor's Degree at Columbia.

15. At the time of his expulsion from Juilliard, plaintiff was 30 credits short of completion of his Bachelor's degree at Columbia.

**16.** Thereafter, plaintiff was able, after considerable hardship, to attend Bard College for two semesters where he earned 24 more credits. Consequently, Plaintiff is presently 6 credits short of his requirement to obtain his Bachelor's degree from Columbia.

**17.** Plaintiff was enrolled in what is called a "3-2" Program, that consists of 3 years for a Bachelor's degree at Columbia and 2 years at Juilliard for his Master's.

**18.** Students in the Barnard-Columbia-Juilliard Exchange Program, (hereinafter "Exchange Program"), are registered full-time students at either Barnard or Columbia and cross-register to have weekly instrumental, jazz, composition, or voice instruction with a member of the Juilliard faculty.

**19.** Participants in the Exchange Program have access to nearly all practice facilities at both Juilliard and Columbia, are allowed to participate in chamber music at Juilliard, observe master classes in their area of specialization and, are eligible to compete in Juilliard's annual concerto competitions.

**20.** Participants in the Exchange Program are, after one year of study, eligible to audition to the Juilliard Master of Music degree program during their junior year at Barnard or Columbia. Once admitted, the student will spend the two subsequent years primarily at Juilliard, while completing the remaining undergraduate requirements at Barnard or Columbia.

**21.** Completion of all requirements for both institutions will lead to a Bachelor's Degree from Barnard or Columbia and a Master of Music from Juilliard.

**22.** Plaintiff, Hyung-Min Suh, is a gifted pianist whose musical trajectory pointed to a career as a star concert pianist. A winner of the 2001 New York Philharmonic Young Artists Audition at the age of eleven, with performances with the New York Philharmonic Orchestra, and many international piano recitals.

**23.** The complainant, Angie Zhang, had been stalking plaintiff and threatening to ruin his career and reputation. This has come about because of plaintiff's rejecting the romantic advances of said complainant.

**24.** Plaintiff, at all times relevant to this complaint, had maintained his innocence despite the presumption of guilt which the process created by Juilliard to deal with a much-publicized problem of sexual harassment in educational institutions in the United States.

**25.** Defendant Juilliard, referred the charges to the authorities without conducting a thorough and fair investigation. The purpose of such rush referral was an obvious attempt to show the public defendant's Juilliard "*zero tolerance*" stand against sexual harassment. A purely public relations gesture made at the expense of plaintiff's career and reputation.

**26.** The Harassment Panel's unfair protocols, did not allowed plaintiff to present a vigorous, and, most likely, successful defense against the charges. Furthermore, the appeal process was flawed due to the fact that a neutral academic panel did not conduct it, but said Panel was set up in such way that it simply serves as a rubber stamp mechanism of self-validation.

**27.** Plaintiff was not allowed to cross-examine the complainant, nor was he able to have his attorney properly represent him at the hearing. The behavior of the members of the Panel, as an inquisitorial body rather than a fact finding one, is shocking and outrageous to the point of tortuousness.

**28.** The plaintiff consistently maintained his innocence, had no previous record of any kind, which would indicate that he would engage in the type of behavior his accuser attributed to him, and yet, he was found guilty nevertheless because the purpose of the Harassment Panel was to convict regardless of the evidentiary lack of proof.

## <u>AS AND FOR A FIRST CAUSE OF ACTION</u>
### (PRIMA FACIE TORT)

**29.** Plaintiff repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein.

**30.** This is a claim against defendants **Juilliard, Ara Guzelimian, Joan Warren, Alison Scott-Williams,** for intentionally conducting a hearing based upon false and unproved allegations, for the sole purpose of satisfying a public relations campaign.

**31.** Upon information and belief, the complainant, who was the only witness against the plaintiff, did not testify at the hearing, but rather, retracted, in writing, her original accusations, which had alleged harassment and sexual assault.

**32.** This one witness, whose credibility was questionable at best, was never made available for cross-examination by Plaintiff's counsel and was not required by the school authorities involved to attend and testify at the Harassment Panel's hearing, even though her accusations were the basis upon which the Harassment Panel justified its decision to expel plaintiff Hyung-Min Suh from Juilliard.

**33.** Upon information and belief, plaintiff has suffered the loss of his promising career as a concert pianist and had to return to the Republic of Korea where he is presently in military service.

**34.** Furthermore, since his expulsion from Juilliard, Plaintiff has been suffering from depression and has been unable to perform publicly due to the deleterious effect that defendants' thoughtless and negligent actions have wrought upon him.

**35.** Defendant Juilliard's had available other means to discipline Plaintiff, such as: referral to training or educational sessions on sexual misconduct, harassment and other forms of discrimination; a written warning placed in the violator's file; reassignment of responsibilities; reassignment of housing; probation; suspension; and, finally, termination or dismissal. However, the punishment given the defendant was the harshest and most inappropriate given the circumstances and the questionable evidence upon which it was based.

**36.** Upon information and belief, plaintiff received the support and solidarity of his teachers and classmates as demonstrated by the many letters written on his behalf, yet defendant Juilliard did not consider them in arriving at their extreme and senseless punishment of the plaintiff.

**37.** Defendants' objective in creating a so-called Harassment Panel appears to have been driven by a policy of "zero tolerance" against any male student accused of sexual harassment by a female. This policy presumes the truth of the accusation without investigation.

**38.** Plaintiff and complainant's emails were used by the Panel to support their resultant decision to expel plaintiff from the institution.

**39.** The Harassment Panel's findings, as detailed in a letter dated July 11, 2013, were based upon hearsay and which were not thoroughly investigated, concluded that:

> *"After considering the investigative report, the written statements of the Complainant and Respondent, and the verbal testimony of the Respondent at the Harassment Hearing, the Panel finds that Sexual Assault and Harassment did occur in violation of School policy. The panel has decided that the sanction is expulsion from The Juilliard School. This sanction will be placed on your permanent record."*

**40.** The Harassment Panel acted upon the complaint against Plaintiff in a manner that was biased and pre-conceived to result in a guilty finding. Furthermore, said Panel had no evidence of a sexual assault taking place or even considered the motivation and actions of the complainant, whom, for a period of over five months had been stalking the defendant and, upon being spurned by the defendant, became intent in ruining his career and professional reputation as a way to get even with plaintiff, a revenge that was thoughtlessly facilitated by the school's Harassment Panel.

**41.** Due to his inability to continue his studies, plaintiff has been and is presently, suffering from depression and psychosomatic ailments which have resulted in an infection to his fingertips which prevent him from performing as a concert pianist or even practice playing the piano.

**42.** Defendants **Juilliard, Ara Guzelimian, Joan Warren, Alison Scott-Williams,** are liable for said damage and injuries pursuant to Tort Law of the State of New York.

**43.** By reason of the foregoing, plaintiff is entitled to recover damages from the defendant in an amount not to exceed the sum of Twenty Million Dollars ($20,000,000.00).

<u>**AS AND FOR A SECOND CAUSE OF ACTION**</u>
**(PRIMA FACIE TORT)**

**44.** Plaintiff repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein.

**45.** This is claim against defendant Columbia, which, as a result of defendant Juilliard's wrongful actions, for not allowing the plaintiff to continue his studies therein toward his undergraduate degree. This was done without a hearing, and without any consideration for the emotional and mental damage that their actions caused to plaintiff's career, reputation and well-being.

**46.** The defendant Columbia without any independent hearing terminated plaintiff's enrollment causing plaintiff to be unable to complete his course of study toward his Bachelor's Degree.

**47.** As a consequence of their thoughtless, irrational and tortious handling of a situation which had no bearing on plaintiff's conduct as a student in its own institution, plaintiff suffered extreme emotional and mental distress, and was forced to return to the Republic of Korea and be exposed to the shame and humiliation of having been expelled from such prestigious institutions.

**48.** Defendant Columbia is liable for said damage and injuries pursuant to the Tort Law of the State of New York.

**49.** By reason of the foregoing, plaintiff is entitled to recover damages from the defendant in an amount not to exceed the sum of Twenty Million Dollars ($20,000,000.00).

## AS AND FOR A THIRD CAUSE OF ACTION
### (Retention of Incompetent and Unfit employees)

**50.** Plaintiff repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein.

**51.** This is a claim against defendant Juilliard, which, by condoning the wrongful actions of its employees, allowing the expulsion of plaintiff on the basis of the decision reached by its Harassment Panel after what, at best, can be viewed as a kangaroo court, while ignoring its bias and pre-determined political and public relations-driven goals.

**52.** Due to his inability to continue his studies, plaintiff has been and is presently, suffering from depression and psychosomatic ailments which have resulted in an infection to his fingertips which prevent him from performing as a concert pianist or even practice playing the piano.

**53.** Defendant Juilliard is liable for said damages and injuries pursuant to the Tort Law of the State of New York.

**54.** By reason of the foregoing, plaintiff is entitled to recover damages from the defendants in an amount not to exceed Twenty Million Dollars ($20,000.00), for said damage and injuries pursuant to the Tort Law of the State of New York.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (PRIMA FACIE TORT)

**55.** Plaintiff repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein.

**56.** This is a claim against defendant Columbia, which without any independent hearing, negligently accepted and adopted defendant's Juilliard Harassment Panel's conclusions and decision by refusing plaintiff re-enrollment causing plaintiff inability to complete his Bachelor's Degree.

**57.** As a consequence of their prejudicial and biased handling of a situation which had no bearing on plaintiff's actual conduct as a student in its institution, plaintiff suffered extreme emotional and mental distress, was forced to return to the Republic of Korea and be exposed to the shame and humiliation of having been expelled from such prestigious institution.

**58.** Due to his inability to continue his studies, plaintiff has been and is presently, suffering from depression and psychosomatic ailments which have resulted in an infection to his fingertips which prevent him from performing as a concert pianist or even practice playing the piano.

**59.** Defendant Columbia is liable for said damages and injuries pursuant to the Tort Law of the State of New York.

**60.** By reason of the foregoing, plaintiff is entitled to recover damages from the defendant in an amount not to exceed the sum of Twenty Million Dollars ($20,000.000.00).

## AS AND FOR FIFTH CAUSE OF ACTIONS
**(PRIMA FACIE TORT)**

**61.** Plaintiff repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein.

**62.** This is a claim against defendant Juilliard, which, by condoning the wrongful actions of its employees, allowed the expulsion of plaintiff on the basis of the decision reached by its Harassment Panel after what, at best, can be viewed as a kangaroo court, ignoring its bias and pre-determined political and public relations-driven goals.

**63.** Defendant Juilliard established a Harassment Panel designed to address complaints of sexual harassment by students and faculty, primarily female, in response to public outcries and national news media attention to claims, mostly by female students and faculty, of ignored and tacitly condoned instances of sexual harassment in different higher education institutions.

**64.** Defendant Juilliard created its Harassment Panel with the intent to show its commitment to the protection of its female students from sexual harassment. In so doing, defendant Juilliard created a Panel which sole purpose was to punish those accused of sexual harassment in the harshest possible way without consideration or fairness to the accused.

**65.** Upon information and belief, shielding itself from criticism in the national news media by adopting a "zero tolerance" stance, defendant Juilliard proceeded to subject plaintiff to an inquisitorial and unquestionably bias hearing where there were no confrontations of accused and accuser, no active participation by counsel for the accused, and no consideration of the damage that a rushed decision to expel plaintiff from the institution would cause him.

**66.** Defendant Juilliard did not properly train or hire experts in the field of sexual harassment and relied solely on its faculty to administer and prosecute plaintiff without any of the time-honored guaranties granted to a defendant in even the most pedestrian of cases in this country.

**67.** Because of defendant Juilliard's Harassment Panel actions, plaintiff was expelled from its Master of Music program and was unable to continue his studies toward a Bachelor's degree at Columbia University.

**68.** Furthermore, plaintiff, a gifted concert pianist, suffered professionally by being labeled a sexual predator in the news media, and was forced to withdraw from participation in many prestigious and career advancing competitions. Derailing what was, until the Harassment Panel's unduly harsh and unwarranted decision.

**69.** Plaintiff has have to endure news media vilification and the resulting demonization of his public persona and reputation, consequently, plaintiff have suffered emotional and mental distress resulting in physical symptoms such as an infection affecting his fingers making his playing the piano extremely painful and preventing him from conducting his habitual practice.

**70.** Defendant Juilliard is liable for said damages and injuries pursuant to the Tort Law of the State of New York.

**71.** By reason of the foregoing, plaintiff is entitled to recover damages from the defendant in an amount not to exceed the sum of Twenty Million Dollars ($20,000.000.00).

**AS AN FOR A SIXTH CAUSE OF ACTION**
**(PRIMA FACIE TORT)**

**72.** Due to his inability to continue his studies, plaintiff has been and is presently, suffering from depression and psychosomatic ailments which have resulted in an infection to his fingertips which prevent him from performing as a concert pianist or even practice playing the piano.

**73.** Plaintiff repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein.

**74.** This is a claim against defendant Columbia, which without any independent hearing, blindly accepted and adopted defendant's Juilliard Harassment Panel's conclusions and decision and refused plaintiff re-enrollment causing plaintiff inability to complete his Bachelor's Degree.

**75.** As a consequence of defendant Columbia's actions plaintiff suffered the lost of his status as a foreign student and had to return to Korea without finishing his studies.

**76.** Defendant Columbia is liable for said damages and injuries pursuant to the Tort Law of the State of New York.

77. By reason of the foregoing, plaintiff is entitled to recover damages from the defendant in an amount not to exceed the sum of Twenty Million Dollars ($20,000.000.00).

### AND AS FOR A SEVENTH CAUSE OF ACTION
### (BREACH OF CONTRACT)

78. Plaintiff repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein. Upon information and belief, Defendants Juilliard and Columbia, by first expelling and later, on January 12, 2015, by rejecting plaintiff's request for reinstatement, breached the contract they had made with plaintiff to provide him with an education.

79. Defendants **Juilliard** and **Columbia** are liable for said damages and injuries pursuant to the Contract Law of the State of New York.

80. By reason of the foregoing, plaintiff is entitled to recover damages from the defendant in an amount not to exceed the sum of Twenty Million Dollars ($20,000.000.00).

**WHEREFORE,** Plaintiff demands judgment against all the defendants in the amount of their damages as set forth above, all together with interest, costs and attorney's fees to the extend permitted by law.

**Dated**: New York, New York
July 7th 2016

Respectfully yours,

*JUAN PABLO VEGAROMERO, ESQ*
*DAWN M. FLORIO, ESQ.*

BY: *Juan Pablo Vegaromero*

**J.P. Vegaromero**

# UNITED STATES DISTRICT COURT
## For the
## Southern District of New York

| | |
|---|---|
| **HYUNG-MIN SUH** | ) Index No.: 1:16-cv-05598 |
| **Plaintiff ,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **THE JUILLIARD SCHOOL OF MUSIC,** | ) |
| **COLUMBIA UNIVERSITY IN  THE** | ) |
| **CITY OF NEW YORK, ARA GUZELIMIAN,** | ) |
| **JOAN WARREN, ALISON SCOTT-WILLIAMS** | ) |
| **Defendants** | |

### APPEARANCE OF COUNSEL

**TO:** The Clerk of the Court and all parties of record:

I am admitted to practice in this court, and I appear in this case as counsel for:

### *HYUNG-MIN SUH*

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed documents are not frivolous.*

DATED:  July 11th 2016

*Juan Pablo Vegaromero*
*JUAN PABLO VEGAROMERO, ESQ.*

*J.P. Vegaromero, Esq.*
*P.O. Box 30246*
*New York, N.Y. 10011-0103*
*Tel.: (646) 228-3676*
*Fax: (212) 939-9533*
*juanpablovegaromero@mac.com*